United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Federal Trade Commission, Plaintiff | )<br>)<br>) |
| v. | )<br>) Civil Action No. 11-61072-Civ-Scola<br>) |
| American Precious Metals, LLC, *et al.*, Defendants | )<br>)<br>) |

### **Order Granting Motion for Equitable Lien**

This matter is before the Court on the Federal Trade Commission's ("FTC's") Motion for Equitable Lien on the Homestead of Defendant Sam J. Goldman. (ECF No. 339). The FTC filed this action under Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, and the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101-6108, to obtain permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other equitable relief for the Defendants' acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a) and the FTC's Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310. On November 19, 2012, the Court entered a Stipulated Final Judgment and Permanent Injunction as to Defendant Goldman (ECF No. 300). The final judgment entered a monetary judgment against Goldman, jointly and severally with the Defendants, in the amount of $24,372,491. (*Id.* at 6.) The FTC has collected $372,573.79 of the judgment. (Mot. for Equitable Lien at 2, ECF No. 339.)

   **1. Legal Standard**

Florida courts impose equitable liens on homesteads when the plaintiff can establish that the defendant has used fraudulently obtained funds to invest in, purchase or improve a homestead. *See, e.g., In re Financial Federated Title and Trust, Inc.*, 347 F.3d 880, 887-88 (11th Cir. 2003) (per curiam) (citations omitted) ("[t]he rule. . .that a homestead cannot be employed as an instrumentality of fraud has been restated by the Supreme Court of Florida in numerous cases to impose an equitable lien against homestead property."); *Palm Beach Sav. & Loan Ass'n, F.S.A. v. Fishbein,* 619 So.2d 267, 270 (Fla. 1993) (". . . it is apparent that where equity demands it this Court has not hesitated to permit equitable liens to be imposed on homesteads. . ."). Once an

equitable lien is imposed, the property can be sold and the proceeds applied in favor of the lien holder. *See SEC v. Kirkland*, No. 6:06-cv-183, 2008 WL 1787234, at *5 (M.D. Fla. April 11, 2008) (citing *Jones v. Carpenter*, 106 So. 127, 129 (Fla. 1925)) (imposing an equitable lien on the defendant's homestead in the amount traceable to fraudulent conduct and granting the receiver's motion to authorize sale of the property).

In order to obtain an equitable lien on a Florida homestead, a plaintiff must establish by a preponderance of the evidence: (1) the existence of fraudulent or egregious conduct, and (2) the tracing of funds from that conduct to the purchase or improvement of the homestead. *In re Financial Federated*, 347 F.3d at 888 (noting that the Florida Supreme Court "has upheld the equitable lien cases where the funds obtained through fraud or egregious conduct can be directly traced to the investment, purchase or improvement of homestead."); *In re Mazon*, 387 B.R. 641, 646 (M.D. Fla. 2008) ("[w]here tracing funds is involved, a dollar-for-dollar accounting is not required, but the party challenging the homestead exemption has the burden of proving his case by a preponderance of the evidence.").

### 2. Analysis

The final judgment states that "Defendant Goldman agrees that the facts as alleged in the First Amended Complaint filed in this action shall be taken as true without further proof in any bankruptcy case of subsequent civil litigation pursued by the Commission to enforce its rights to any payment or money judgment pursuant to this Final Order. . ." (*Id.* at 8.) The allegations in the First Amended Complaint, taken as true by virtue of Goldman's agreement in the final judgment, establish that Goldman was involved in fraudulent conduct. Goldman was an owner or manager of American Precious Metals ("APM") and oversaw its day-to-day operations. (First Am. Compl. ¶ 9, ECF No. 155.) APM lied to consumers about all aspects of their product, falsely telling them that they were likely to earn large profits quickly by investing in precious metals and that the investment was low-risk due to APM's purchase of the physical precious metals in bars, bullion, and coins. (*Id.* ¶¶ 11-21.) In addition, APM failed to disclose that it took more than 40 percent of consumers' money for fees and commissions and that, as a result of the way in which APM leveraged consumers' funds, consumers were likely to receive equity calls that would require additional payments or risk the liquidation of their investments. (*Id.* ¶¶ 22-24, 26-27, 32.) As a result of these practices, many consumers lost the equity in their investments. (*Id.* ¶¶ 29, 31.) Because of these lies and omissions, consumers were induced to send APM more than $24 million. (Mot. for Equitable Lien at 4, ECF No. 339.)

The FTC has submitted excerpts from transcripts of depositions of Goldman and two of his co-defendants that establish that Goldman received more than $2.6 million in fraudulently obtained funds from three different entities. (*Id.* at 6-7 and Exs. 1-3.) The FTC used a forensic accountant, Melissa Davis, to trace the proceeds that Goldman received from his participation in APM's scheme, and has submitted a declaration from Davis that explains her findings and methodology and provides supporting documentation. (*Id.* at Ex. 4.) Although Goldman commingled the fraudulently obtained funds with legitimately obtained funds, the commingling of funds does not defeat a claim for an equitable lien. *In re Hecker*, 316 B.R. 375, 387 (Bankr. S.D. Fla. 2004) (Friedman, J.), *affirmed*, 264 Fed. App'x. 786 (11th Cir. 2008); *In re Mazon*, 387 B.R. 641, 646 (M.D. Fla. 2008). However, Florida courts have created certain presumptions for tracing commingled funds. *In re Hecker*, 316 F.3d at 387. First, courts apply the "lowest intermediate balance rule," which presumes that the person who controls the commingled funds will first dissipate his own funds, rather than those that were fraudulently obtained. *Id.* (citations omitted). Second, courts apply the replenishment rule, which presumes that when funds are replenished in a commingled account, the person who controls the commingled funds will first replenish any fraudulently obtained funds. *Id.* at 387-88.

Davis applied both of these presumptions to trace the fraudulently obtained funds using Goldman's bank records. (Mot. for Equitable Lien at 6, 10-16 and Ex. 4, ECF No. 339.) Davis concluded that $428,604.95 of the funds that Goldman used to pay for his mortgage and other expenses related to the homestead between August 10, 2007 and May 14, 2014 can be traced to fraudulently obtained funds. (*Id.* at Ex. 4) Therefore, the FTC's motion, along with Davis's declaration and supporting materials, sufficiently establishes that Goldman used fraudulently obtained funds for the investment, purchase or improvement of his homestead.

In response to the FTC's motion, Goldman submitted an opposition that requests an evidentiary hearing. (Def.'s Resp., ECF No. 355.) However, Goldman's response does not include a single factual allegation to rebut Davis's tracing analysis. Goldman makes several vague statements about what he would show at an evidentiary hearing; for example, that Davis's declaration contains "a myriad of errors, inaccuracies, and omissions." (*Id.* at 5, 10). However, Goldman fails to identify a single alleged error in Davis's analysis. The Court notes that Goldman requested two extensions of time to respond to the FTC's motion. (ECF Nos. 346, 351.) In his first request for extension of time, Goldman specifically stated that "The FTC has filed a voluminous amount of documents in support of its Motion for Equitable Lien, requiring Defendant,

Goldman to: (1) hire his own forensic accountant to rebut the FTC's forensic accountant's report; (2) file affidavits rebutting facts asserted by the FTC; and (3) submit supporting documents." (Def.'s Am. Mot. for Extension of Time at 3, ECF No. 346.) In his second request for extension of time, Goldman stated that "Defendant, Sam Goldman is still preparing his Affidavit, and may need to retain the services of a Forensic Accountant to complete his affidavit." (Second Mot. for Extension of Time at 2, ECF No. 351.) The Court granted both requests for extension of time. (ECF Nos. 350, 353.) However, Goldman's response does not include an affidavit, the report of a forensic accountant, or any supporting documentation.

Although Goldman is correct that courts do at times conduct evidentiary hearings to determine whether a plaintiff is entitled to an equitable lien, Goldman has not established that there are any disputed facts that would warrant an evidentiary hearing. Florida law requires that the plaintiff show by a preponderance of the evidence that fraudulently obtained funds can be directly traced to the investment, purchase or improvement of the homestead. *See In re Financial Federated*, 347 F.3d at 888 (noting that the Florida Supreme Court "has upheld the equitable lien cases where the funds obtained through fraud or egregious conduct can be directly traced to the investment, purchase or improvement of homestead."); *In re Mazon*, 387 B.R. 641, 646 (M.D. Fla. 2008) ("[w]here tracing funds is involved, a dollar-for-dollar accounting is not required, but the party challenging the homestead exemption has the burden of proving his case by a preponderance of the evidence."). The FTC has met its burden through the tracing analysis conducted by its forensic accountant, and Goldman has presented no evidence or made any factual allegations to rebut that analysis. Therefore, a hearing is not necessary.

Goldman made one legal argument in opposition to the FTC's motion, asserting that there is a difference between funds that are used to "maintain" a homestead, as opposed to funds that are used to "improve" a homestead. (*Id.* at 8-9.) Goldman asserts that the FTC must prove that any fraudulently obtained funds were used to "improve" the property rather than "maintain" the property. (*Id.* at 9.) Goldman cited to one case in support of this assertion, but it does not create the distinction between improvement and maintenance on which Goldman relies. *See In re Mazon*, 387 B.R. at 647 (holding that the defendant's exclusive right to use a specific cabana on the common grounds of the condominium was not part of the defendant's homestead).

Accordingly, the Court **grants** the Plaintiff's motion for an equitable lien. The Court **orders** as follows:

**A. Definitions:**
1. "Defendant" means Sam J. Goldman.
2. "Liquidator" means the liquidating receiver appointed in this Order. The term "Liquidator" or "liquidating receiver" also includes any deputy receivers as may be named by the Liquidator.
3. "Property" means Defendant's homestead property described as:
   Lot 19, DELRAY TRAINING CENTER P.U.D., PARCEL B, according to the Plat thereof, as recorded in Plat Book 86, at Page 157, of the Public Records of Palm Beach County, Florida.
   The Property's street address is 15996 D. Alene Drive, Delray Beach, FL 33446.

**B. Equitable Lien**

The Court declares an equitable lien on the Property in favor of the Plaintiff, effective immediately, for Four Hundred Twenty-Eight Thousand Six Hundred Four Dollars and Ninety-Five Cents ($428,604.95).

**C. Appointment and Duties of Liquidating Receiver**

It is ordered that:
1. David R. Chase is appointed as a liquidating receiver ("Liquidator") with all the rights and powers of an equity receiver, over the Property.
2. Upon entry of the Order, the Liquidator is directed and authorized to take exclusive custody, control, and possession of the property. The Liquidator is authorized to take all steps necessary to secure the property as the Liquidator deems necessary or advisable, including completing a written inventory of the property, securing the location by changing the locks or other means of access to the property, and opening one or more bank accounts in the Southern District of Florida as designated depositories for funds generated by the property.
3. As soon as reasonably possible, the Liquidator shall, at reasonable cost and in a commercially reasonable fashion, liquidate the Property. The Liquidator shall pay any necessary brokerage fees, taxes, advertising, and commissions associated with or resulting from the sale of the Property from the proceeds of the sale at the time the Property is sold. The Liquidator shall then distribute the

proceeds of the sale to pay any valid liens, including the FTC's Equitable Lien. The Liquidator shall make the transfer to the FTC by electronic fund transfer or certified or cashier's check, in accordance with instructions provided by the FTC. Defendant Goldman retains the right to assert a claim to any net sale proceeds in excess of the sales price over these sums.

4. The Liquidator shall have all necessary powers to operate and otherwise manage the Property, including, without limitation, the following powers and responsibilities:
    a. To take possession of the Property upon entry of this Order;
    b. To list the property for sale upon entry of this Order;
    c. To supervise and oversee the management of the Property, including making payments and paying taxes as and when the Liquidator has funds available from the liquidation of the Property;
    d. To employ such counsel, real estate agents, auctioneers, appraisers, accountants, contractors, other professionals, and other such persons as may be necessary in order to carry out his duties as Liquidator and to preserve, maintain, and protect the Property;
    e. To determine or abrogate, in the Liquidator's sole sound business discretion, any or all agreements, contracts, understandings or commitments entered into with respect to the Property to the extent permitted by applicable law;
    f. To open new accounts with, or negotiate, compromise or otherwise modify existing obligations with third parties, including utility companies, other service providers or suppliers of goods and services related to the Property, and to otherwise enter into such agreements, contracts, or understandings with such third parties as are necessary to maintain, preserve, and protect the Property;
    g. To open new bank accounts with respect to the Liquidator's management and operation of the Property; and
    h. To apply to this Court for further directions and for such further powers as may be necessary to enable the Liquidator to fulfill his duties.
5. Upon transfer of legal and equitable title and possession, the Liquidator is authorized to assume responsibility for management of the Property, including but not limited to undertaking repairs

and taking any other actions necessary to efficiently manage the Property and to maintain its value.
6. The Liquidator shall take all necessary action to procure appropriate insurance for the Property, naming the Liquidator and the FTC as insureds. The Liquidator may as an option keep in force the existing insurance coverage(s), each of which shall name the FTC and the Liquidator as additional insureds thereunder.
7. The Liquidator shall keep a true and accurate account of any and all receipts and expenditures and periodically file with the Court a Liquidatorship Report under oath, accurately identifying all such revenues received and expenditures made, including adequately detailed information concerning income, expenses, payables and receivables. These periodic filings shall be served by the Liquidator on the FTC and Defendant.
8. The Liquidator is entitled to reasonable compensation for the performance of duties undertaken pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by him. The Liquidator's compensation and the compensation of any persons hired by him are to be paid solely from the proceeds of the sale of the Property, and such payments shall have priority over all other distributions except for any transfer fees, recording fees, or other payments owed through the transfer of the Property at the time of its sale.
9. The Liquidator shall file with the Court and serve on the parties a request for the payment of reasonable compensation at the time of the filing of periodic reports and no less than every sixty (60) days. The Liquidator shall not increase the fees or rates used as the bases for such fee applications without prior approval of the FTC and the Court. The Defendant shall have no right to object to the Liquidator's fees or compensation.
10. The Liquidator shall not be bound by all or any unsecured contracts, agreements, understandings or other commitments in the nature of service contracts with third parties with respect to the Property, whether oral or written, and the Liquidator shall be authorized, by affirmative written ramification executed by the Liquidator, to agree to become bound by an such contracts, agreements, understandings or other commitments, or may agree to enter into new or amended contracts, agreements, understandings, or commitments.

11. Upon completion of the sale of the Property and distribution of the proceeds of the sale, the Liquidator shall submit his final report and application for fees and expenses relating to the Liquidatorship over the Property. Upon the Court's approval of the Liquidator's final report as to the Property, the Liquidatorship over the Property shall be terminated. Upon termination of the Liquidatorship, the Liquidator shall return or provide copies to the Defendant of all of Defendant's documents seized by the Liquidator.
12. No person shall institute any action against the Liquidating Receiver or institute a bankruptcy proceeding that affects the property without prior approval of the Court.
13. Upon entry of this Order, the Liquidator shall file with the Clerk of Court a bond in the sum of $10,000, with sureties to be approved by the Court, conditioned that the Liquidator will well and truly perform the duties of the office and abide by and perform all acts that the Court directs.

### D. Cooperation with the Liquidator and Delivery of the Property

It is further ordered that Defendant Goldman, whether acting directly or indirectly, shall fully cooperate with and assist the Liquidator, including, but not limited to:
1. Within thirty (30) days of entry of this Order, Defendant Goldman shall take all such steps as the Liquidator may require to transfer to the Liquidator appointed in Section II of this Order, or to his designated trust, possession and legal and equitable title to the Property. This shall include executing any instruments or documents, procuring the signatures of any person or entity under Defendant's control, providing access to the Property and any necessary information, and turning over the Property. The transfer of possession of the Property occurs when Defendant vacates the Property in "broom clean condition" and delivers all keys and security codes, if any, to the Liquidator along with written notice that possession is surrendered.
2. Defendant Goldman shall additionally:
    a. provide any information to the Liquidator that the Liquidator deems necessary to exercise the authority and discharge the responsibilities of the Liquidator under this Order;

b. cooperate with the advertising, marketing, showing for sale, transfer, and sale of the Property, as well as the satisfaction of the Equitable Lien;
   c. waive all claims to, unconditionally release, and consent to any transfer to the Liquidator of possession and legal and equitable title of the Property requested by the Liquidator.
3. Until Defendant Goldman surrenders possession and legal and equitable title of the Property to the Liquidator, Defendant Goldman shall take all reasonable steps to maintain the value of the Property, including:
   a. remain current on all amounts due and payable on the Property, including, but not limited to tax, insurance, homeowner's assessments, reasonable and necessary maintenance, and similar fees;
   b. maintain any structures, fixtures, and appurtenances thereto in good working order and in the same condition as on the date of the entry of this Order;
   c. maintain existing insurance coverage for the Property in force;
   d. notify the Property's insurance carrier(s) immediately of the appointment of the Liquidator and request that the Liquidator and the FTC be added to the insurance policy or policies as additional insureds thereunder;
   e. in the event that the Property suffers any loss or damage covered by an applicable insurance policy prior to its transfer to the Liquidating Receiver, Defendant shall make such claims as are permitted by the insurance policy and shall assign or remit any insurance payment received as a result of such loss or damage to the Liquidator.
4. Defendant Goldman is restrained and enjoined from directly or indirectly interfering in the duties of the Liquidator under this Order, including, but not limited to,
   a. transferring possession and legal and equitable title of the Property to any person or entity other than at the direction of the Liquidator;
   b. destroying, secreting, defacing, transferring, or otherwise altering or disposing of any documents needed by the Liquidator to comply with this Order;
   c. taking any action to diminish the value of the Property;

   d. encumbering, pledging, assigning, liquidating, or otherwise disposing of the Property, other than at the direction of the Liquidator;

   e. interfering in any manner with the Liquidator's efforts to enter onto, market, or sell the Property, including, but not limited to, the Liquidator's efforts to gain access to and show the Property to prospective purchasers or brokers or to evaluate or cause his agents, representatives, or contractors to maintain, repair, restore, or evaluate the condition of the Property from entry of this Order and thereafter.

 5. Except as set forth in Section II.H of this Order, the costs and expenses of transferring the Property to the Liquidator shall be paid by the Liquidatorship.

### E. Transfer of Funds to the Liquidator by Financial Institutions and Other Third Parties

It is further ordered that, upon service of a copy of this Order, any financial or brokerage institution or depository, escrow agent, title company, commodity trading company, payment processing company, or trust shall cooperate with all reasonable requests of the Liquidator relating to implementation of this Order.

### F. Retention of Jurisdiction

It is further ordered that the Court will retain jurisdiction to enforce the satisfaction of the equitable lien.

**Done and Ordered**, at Miami, Florida, on April 10, 2017.

_____
Robert N. Scola, Jr.
United States District Judge